488 P.2d 219 (1971)
FORD MOTOR COMPANY, Plaintiff in Error,
v.
B. V. CONRARDY et al., Defendants in Error.
No. 71-166, (Supreme Court No. 24508.)
Colorado Court of Appeals, Division II.
July 20, 1971.
Rehearing Denied August 17, 1971.
*220 Yegge, Hall & Evans, Richard D. Hall, Denver, for plaintiff in error.
William J. Madden, Denver, for defendants in error.
Selected for Official Publication.
DWYER, Judge.
The Ford Motor Company, by this writ of error, seeks to reverse judgments entered against it in an action brought by defendants in error, as plaintiffs in the trial court.
In July of 1965, plaintiffs B. V. Conrardy and his son, Galen Conrardy, purchased an automobile manufactured by defendant from one of defendant's authorized retail dealers. On January 4, 1966, this automobile, while driven by B. V. Conrardy, left the highway and overturned. The plaintiffs alleged that this accident was caused by a mechanical failure of the steering system which occurred when a control arm in the system broke due, they alleged, to a defect in the control arm existing at the time they purchased the vehicle. After a trial before a jury, which returned verdicts in favor of plaintiffs, judgment was entered in favor of B. V. Conrardy in the amount of $13,000, as damages for personal injuries, and in favor of all plaintiffs for $1,649, the stipulated amount of the damage to the car.
The issues on appeal concern questions of liability and of damages. In submitting the case to the jury the court gave the following instruction on the issue of liability.
"If you find that there was no defect in said left lower control arm on plaintiff's automobile on the date of purchase, July 3, 1965, or that, if present at that time, it was not a proximate cause of the accident on January 4, 1966, you will bring in a verdict in favor of the defendant and against the plaintiffs.
"On the other hand, if you find that the left lower control arm on the plaintiff's automobile contained a defect on the date of purchase, July 3, 1965, and further find that said defect was the proximate cause of the accident in question on January 4, 1966, you will bring in your verdict in favor of the plaintiffs and against the defendant, unless however, you should also find by a preponderance of the evidence that the plaintiff, B. V. Conrardy, was negligent and his negligence was a proximate cause of said accident, in which event your verdict must be for the defendant."
In seeking reversal the Ford Motor Company does not contend that the court erred in giving this instruction, which imposed strict liability on it as the manufacturer of the car. The basis of its claim of *221 error is that there is no evidence that the defect in the control arm existed at the time the automobile was purchased by plaintiffs.
B. V. Conrardy testified that the steering system of the automobile had always operated properly prior to the accident. In describing the accident, he said that he was driving on a smooth dry road in a normal fashion; that the car suddenly veered to the left across the highway; that he was unable to steer or control the car; and that it went off the road into a ditch.
A mechanic who examined the vehicle after the accident testified that he found that the lower left control arm was broken or split into two pieces. The pieces were removed, and his examination revealed corrosion on the control arm at exactly the place where it had broken or cracked. This corrosion indicated to him that the crack had existed for some time prior to the accident. His examination of the vehicle indicated that the break did not result from the overturning of the car.
A professor of metallurgical engineering examined the pieces of the lower control arm. His microscopic examination revealed the presence of non-metallic inclusions in the metal of the control arm. The professor was called as an expert witness and testified that this condition is an indication that the metal is defective; that these non-metallic inclusions in the control arm were probably initiated during the manufacturing process; and that such defective condition probably caused the crack in the control arm.
Plaintiffs called an additional witness who was qualified as an expert in the field of automotive and metallurgical engineering. He testified that, on the basis of his examination of the control arm, he was of the opinion that the control arm suffered a "brittle fracture;" that the fracture was caused by an inherent and latent defect; and that the defect originated in the manufacturing process.
The plaintiffs' evidence, although in sharp conflict with defendant's evidence, was sufficient to submit the issues to the jury and to support the jury's verdict in plaintiffs' favor on the issue of liability. The verdict, although based on conflicting evidence, will not be disturbed on review. Schneider v. Pinnt, Colo., 476 P.2d 1004; Rosenthal v. Citizens State Bank, 129 Colo. 35, 266 P.2d 767.
The Ford Motor Company argues that if the evidence of liability is held to be sufficient, then, as an alternative to reversal, it is entitled to a new trial on the issue of B. V. Conrardy's damages. In support of this position, it asserts that the damages are excessive under the evidence, and, further, that the award is based upon improper instructions and inadmissible evidence.
In the accident Mr. Conrardy suffered a 3½ laceration on his forehead and eyelid, and fractures of the third, fourth, and fifth ribs on the right side. The laceration was closed with 16 stitches, and his arm was placed in a sling. He was not hospitalized, but remained in his house for a week or two. Mr. Conrardy was a farmer and a rancher, and he testified that he had difficulty operating farm machinery and performing other tasks incidental to his occupation. He testified that it was approximately one year before he fully recovered. He proved no permanent disability. His medical expenses amounted to $117, and he paid his sons $1,080 for labor which he would ordinarily have performed himself. Mr. Conrardy described his farming and ranching operation. He generally ran about 100 head of cattle and annually sold 40 or 50 head. He estimated that his "profit" during the years 1961 through 1965 was between $30 to $50 a head for the cattle sold. His operation during the year 1966 was comparable to his operation in previous years. During 1966, he continued to run approximately 100 head of cattle and during that year he sold 50 to 55 head.
Over the objection of the defendant, Mr. Conrardy was permitted to testify that before the accident he had planned to borrow $17,500 to purchase 200 head of cattle. He estimated that he would have made $55 or *222 $56 profit per head and that he was prevented from carrying out this venture because of the accident.
Mr. Conrardy also testified that he lost the opportunity to pasture and feed 200 head of cattle on contract with the owner of the cattle.
In submitting the case to the jury the court charged the jury that if it found that plaintiff B. V. Conrardy was entitled to recover, his damages should be assessed in an amount which would reasonably and justly compensate him for his injury and damages and that:
"In assessing such sum you shall take into consideration the nature and extent of his injuries, the physical and mental pain and suffering endured by him prior to the trial of this case, if any; the debts incurred and payments made for necessary medical and other expenses; all insofar as the above items have been established by the evidence.
"You are further instructed that if you find that the Plaintiff Conrardy is entitled to recover and that he has established by a preponderance of the evidence that he lost any earnings, lost any time, was required to employ others to perform his work or that he incurred any assessable loss of business profits, you shall take these matters into consideration in arriving at your verdict." (Emphasis added)
The jury was further instructed:
"Loss of profits, if any, is compensable as an element of damages only where the same is not speculative, remote or imaginary, and said loss of profits must have their foundation in the past business experience of the party to the suit.
"By the term `loss of profits' is meant the profit remaining after deduction of expenses of a business operation."
It was error for the court to instruct the jury that plaintiff could recover, as a separate element of damages, for "loss of business profits." It was also error for the court to permit B. V. Conrardy to testify to profits he expected to make by borrowing money and engaging in a speculative venture, and to permit him to testify to a loss of the "opportunity" to make a profit by feeding cattle on contract. Evidence of loss of anticipated profits from a speculative venture is inadmissible. Milheim v. Baxter, 46 Colo. 155, 103 P. 376. These errors require a reversal and a remand for a new trial on the issue of B. V. Conrardy's damages.
Plaintiff was entitled to recover for the loss of time from his occupation which resulted from the injuries he sustained. See Van Schaack & Co. v. Perkins, 129 Colo. 567, 272 P.2d 269; Gerick v. Brock, 120 Colo. 394, 210 P.2d 214.
Plaintiff was not entitled to recover for "loss of business profits" as a distinct element of damages. Strictly speaking, "business profits" mean the net earnings of a business and such profits arise from the elements of invested capital and employed labor, rather than from personal labor. For this reason "loss of profits," as such, is not the measure of damages in a personal injury case. City of Pueblo v. Griffin, 10 Colo. 366, 15 P. 616; see also Trujillo v. Wilson, 117 Colo. 430, 189 P.2d 147; Mountain States T. & T. Co. v. Sanger, 87 Colo. 369, 287 P. 866; Union Depot & Ry. Co. v. Londoner, 50 Colo. 22, 114 P. 316.
Our Supreme Court has recognized the rule that when an injured plaintiff is engaged in a business or occupation in which the element of plaintiff's personal services predominates and the elements of capital and the labor of others is not so material, then evidence of loss of profits may be shown as an aid in determining the pecuniary value of plaintiff's loss of time. This rule was applied to a salesman in Rio Grande Western Ry. Co. v. Rubenstein, 5 Colo.App. 121, 38 P. 76, and to farmers in Trujillo v. Wilson, supra, and Mountain States T. & T. Co. v. Sanger, supra. Such holdings are neither in conflict with nor an exception to the rule that "profits," as such, are not recoverable in personal injury *223 actions. The distinction, recognized in Rio Grande Western Ry. Co. v. Rubenstein, supra, is that in such cases the plaintiff's loss is not a loss of profits, in the sense that that term is used in actions for breach of contract, but is a loss of earnings from personal services and, as such, is a loss recoverable as an element of damages.
The judgment in favor of B. V. Conrardy, Galen Conrardy, and Trinity Universal Insurance Company and against the Ford Motor Company in the amount of $1,649 is affirmed; the judgment in favor of B. V. Conrardy against the Ford Motor Company in the amount of $13,000 is reversed and the cause is remanded for a retrial of the claim of B. V. Conrardy against the Ford Motor Company on the issue of damages only.
SILVERSTEIN, C. J., and PIERCE, J., concur.