David **SCHELL** and Susan Schell,
Plaintiffs-Appellees
Cross-Appellants,

v.

**NAVAJO FREIGHT LINES, INC.**, a foreign corporation authorized to transact business in Colorado, Defendant-Appellant,

v.

**DENVER–ALBUQUERQUE MOTOR TRANSPORT, INC.**, a Colorado corporation, Defendant-Cross-Appellee.

No. 82CA1495.

Colorado Court of Appeals,
Div. III.

Sept. 27, 1984.

Rehearing Denied Nov. 1, 1984.

Flanders, Wood, Sonnesyn & Schuetze, Robert A. Schuetze, Richard C. Hoge, Longmont, for plaintiffs-appellees and cross-appellants.

DeMoulin, Anderson, Campbell & Laugesen, P.C., Laird Campbell, Denver, for defendant-appellant.

Hall & Evans, Duncan W. Cameron, Alan Epstein, Denver, for defendant-cross-appellee.

TURSI, Judge.

Defendant Navajo Freight Lines, Inc. (Navajo), appeals the judgment of the trial court entered upon a jury verdict finding it liable to plaintiffs, David and Susan Schell, for damages incurred as a result of a motor vehicle collision in which David Schell was injured. The Schells cross-appeal the trial court's denial of their motion for summary judgment on the issue of Navajo's liability as a matter of law, and appeal the trial court's award of summary judgment in favor of defendant Denver-Albuquerque Motor Transport, Inc. (D-A). A default judgment was entered against Roy Lovato and Bruce Brown and it has not been appealed. We affirm.

On March 1, 1978, Lovato, an intrastate trucker, entered into a trip lease with Navajo. Lovato leased to Navajo a 1975 International tractor and a 1974 Timpte flatbed trailer. The lease provided that Lovato and Brown, employed by Lovato as a driver, were to drive to California to pick up a load of steel and deliver it to the Wej-it Corporation in Broomfield, Colorado. Navajo's ICC authorization allowed Lovato and Brown to transport this interstate shipment. The lease contains the following provision:

"[Lovato] shall surrender full control, possession, and management of said equipment to [Navajo] during the term of this lease which shall start at delivery of equipment and end with delivery of cargo at destination, and [Lovato] further agrees to operate said equipment as directed by [Navajo]."

Lovato and Brown immediately drove to California with the International tractor and Timpte trailer mentioned in the lease. They picked up the load of steel, and arrived back in Denver in the evening of March 2, 1978. On March 3, 1978, apparently because the International tractor required repairs to its brakes, Lovato and Brown switched the Timpte trailer onto a Kenworth tractor. The Kenworth previously had been under permanent lease to D-A, and D-A's name and ICC number remained stenciled on the tractor. Brown went to Broomfield with the load of steel, while Lovato remained in Denver to work on the International tractor.

Brown arrived at the Wej-it Corporation at noon on March 3, 1978. Wej-it was on a four and one-half day work week, however, and there was no one at the plant to unload the steel. Therefore, Wej-it refused delivery. Brown contacted a Navajo dispatcher, who directed him to return with the load the following Monday, when it could be unloaded by Wej-it employees.

At approximately 3:00 p.m., on March 3, 1978, Brown, driving the Kenworth tractor and Timpte trailer loaded with steel, ran a red light in Longmont, Colorado, and collided with a vehicle driven by David Schell. Subsequently, the load was delivered and accepted by Wej-it.

The liability of Lovato and Brown was not contested at trial. The Schells, therefore, moved for partial summary judgment, requesting the trial court to rule as a matter of law that Navajo was liable for the negligence of Brown. The motion was denied by the trial court. Navajo then filed a motion for summary judgment on the ground that it was not liable for the acts of Brown. This motion also was denied by the trial court. The trial court ruled that Brown was a statutory employee of Navajo during the term of the trip lease and that Navajo was vicariously liable for all acts of Brown committed within the scope of his employment. On the third day of trial, the

trial court granted D–A's motion for summary judgment.

The trial court instructed the jury that it found as a matter of law that Brown was an employee of Navajo on March 3, 1978. The trial court further instructed the jury that if Brown was within the scope of his employment at the time of the accident, his negligence is imputed to Navajo. The trial court submitted the issue of scope of employment to the jury with an appropriate instruction.

Pursuant to a special verdict form, the jury found that Brown was within the scope of his employment at the time of the accident, that David Schell incurred injuries as a result of the accident, and that Susan Schell incurred loss of consortium as a result of the accident. The jury assessed $183,441.18 damages in favor of David Schell, and $48,550 in damages in favor of Susan Schell.

## I

The trip lease executed by Navajo and Lovato is governed by the Interstate Commerce Act. 49 U.S.C. § 11107 1982 ed. (formerly 49 U.S.C. § 304(e) (1976)). The statute, which was enacted to prevent authorized interstate carriers from immunizing themselves from liability to the public by leasing trucks from irresponsible third parties, authorizes the ICC to promulgate regulations governing trip leases. *American Trucking Associations, Inc. v. United States,* 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). Pursuant to its authority, the ICC promulgated a regulatory scheme to effectuate Congress' intent to render carriers primarily liable to the public. *American Trucking Associations, Inc., supra; Cox v. Bond Transportation, Inc.,* 53 N.J. 186, 249 A.2d 579 (1969), *cert. denied,* 395 U.S. 935, 89 S.Ct. 1999, 23 L.Ed.2d 450 (1969).

At the time the lease was executed 49 C.F.R. § 1057.4 (1977) (now renumbered as 49 C.F.R. § 1057, et seq. (1983)) contained the pertinent provisions regarding carrier liability. The regulation provides that trip leases, which have a limited duration of 30 days when the equipment is to be operated by its owner or his employee, "shall provide for the *exclusive possession, control, and use of the equipment, and for a complete assumption of responsibility in respect thereto, by the lessee [carrier] for the duration of said contract, lease or other arrangement.*" (emphasis added) The regulation requires a carrier to give a receipt to the owner of the equipment when its possession under the lease commences, and requires the owner to give a receipt to the carrier when possession under the lease terminates.

■ The great weight of authority interpreting the effect of the ICC regulations, which we find persuasive, concludes that the regulations modify traditional common law notions of respondeat superior. *See Cox v. Bond Transportation, Inc., supra; Simmons v. King,* 478 F.2d 857 (5th Cir. 1973). The regulations, which have the force and effect of law, eliminate the defense of independent contractor by making the owner/operator of the equipment the "statutory employee" of the carrier. *See Brannaker v. Transamerican Freight Lines, Inc.,* 428 S.W.2d 524 (Mo.1968); *Cosmopolitan Mutual Insurance Co. v. White,* 336 F.Supp. 92 (D.Del.1972); *Simmons v. King, supra; Cox v. Bond Transportation, Inc., supra.* Thus, for liability purposes, an owner/operator of leased equipment is treated as an employee of the carrier during the term of the lease.

## II

■ There is also a conflict of authority on the issue whether carrier liability requires that the negligent act of the employee be within the scope of employment. *See Schedler v. Rowley Interstate Transportation Co., Inc.,* 68 Ill.2d 7, 11 Ill.Dec. 541, 368 N.E.2d 1287 (1977); *Wilcox v. Transamerican Freight Lines, Inc.,* 371 F.2d 403 (6th Cir.1967), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); and *Cox v. Bond Transportation, Inc., supra.* Here, the trial court instructed the jury that Navajo was liable for the negligent acts of Brown only if at the time

of the accident he was acting within the scope of his employment. We find this to be the preferable rule. We also note that the instruction was based upon Navajo's theory of the case. Thus, the issue whether Brown was acting within the scope of his employment at the time of the accident was properly submitted to the jury as a disputed question of fact. *Marron v. Helmecke,* 100 Colo. 364, 67 P.2d 1034 (1937).

### III

Navajo contends that the trial court erred in instructing the jury on loss of consortium as there was no evidence to support a finding of damages, and that the award assessed by the jury is manifestly excessive. We disagree.

 Consortium consists of rights arising out of a marital relationship, which by their nature are intangible. Therefore, loss of consortium is not subject to exact monetary proof; rather, the amount of the award is assessed by the jurors based upon "their own observation, experience, and knowledge, conscientiously applied to the facts and circumstances of the case." *Denver Consolidated Tramway Co. v. Riley,* 14 Colo.App. 132, 59 P. 476 (1899). *See also Colo. J.I.* 6:7 (2d ed. 1980). As such, the assessment of damages for loss of consortium is within the sound discretion of the jury. *Union Pacific Ry. Co. v. Jones,* 21 Colo. 340, 40 P. 891 (1895).

Here, there is substantial evidence in the record regarding David Schell's injuries upon which the jury could base an award of loss of consortium in favor of Susan Schell. In determining whether the jury's award for loss of consortium is manifestly excessive, we note that there is evidence in the record that David Schell suffered permanent disability, and that future surgery and treatment are probable. Therefore, although the award is large, we cannot conclude that it is manifestly excessive. *See Hotchkiss v. Preble,* 33 Colo. App. 431, 521 P.2d 1278 (1974).

### IV

Navajo contends that the trial court erred in admitting testimony and financial statements regarding loss of farming income as evidence of David Schell's loss of income. We disagree. David Schell is a tenant farmer. His income is based upon personal labor. In such situations, loss of income or profits is admissible to show the pecuniary value of lost time. *Ford Motor Co. v. Conrardy,* 29 Colo.App. 577, 488 P.2d 219 (1971). Therefore, the evidence was properly admitted by the trial court to show damage suffered by David Schell as a result of being prevented from engaging in his farming operations.

Navajo's remaining contentions and the Schells' cross-appeal are without merit.

Judgment affirmed.

KELLY and METZGER, JJ., concur.