Scott E. **BOVA**, Appellant–Defendant,

v.

Theaodis **GARY**, Jr., Appellee–Plaintiff.

No. 49A02–0505–CV–00385.

Court of Appeals of Indiana.

March 16, 2006.

Kenneth P. Reese, Shannon L. Logsdon, Lewis Wagner, LLP, Indianapolis, for Appellant.

Ronald W. Frazier, Ian W. Thompson, Frazier & Associates, Indianapolis, for Appellee.

**OPINION**

BAKER, Judge.

This case presents us with an S corporation in which one person is the president, sole shareholder, and primary decision maker of the company. Indeed, for all intents and purposes, the company at issue is akin to a sole proprietorship because its only shareholder is so actively engaged in daily operations that he is essentially the company's alter ego.

Appellant-defendant Scott E. Bova appeals from the denials of his motion in limine and motion to dismiss for failure to state a claim. In essence, he argues that it was improper for the jury to be permitted to consider evidence of the lost profits of the S corporation of appellee-plaintiff Theaodis Gary, Jr., following an automobile accident between Bova and Gary.

In these limited circumstances, we will entrust to the discretion of the trial court whether it is proper to introduce evidence of an S corporation's lost profits following an injury to its sole shareholder and virtual alter ego. Finding that the trial court did not abuse its discretion when it allowed the introduction of such evidence, we affirm the judgment of the trial court.

*FACTS* [1]

Gary is the president, sole shareholder, and primary decision maker for AMG Engineering and Machining, Inc., (AMG), an S corporation. At the time of the accident, Gary was doing all of the purchasing and selling for AMG. He was also overseeing accounting and involved in production. Gary is personally liable for all of AMG's secured debt.

On April 16, 2000, Bova and Gary were involved in an automobile accident in Indianapolis. Bova admitted negligence in causing the accident. Thus, the jury trial was limited to the issues of proximate causation and damages.

Gary claims that AMG suffered losses in 2000 and 2001 because of his absence while he was recovering from injuries that he sustained in the automobile accident with Bova. While before and after the accident and recovery period Gary rarely missed work, he was often away from AMG while his injuries were healing. Gary argues that AMG's loss is personal to Gary because "AMG is [Gary], and [Gary] is AMG. If AMG suffers loss, [Gary] suffers loss." Appellee's Br. p. 3. According to Gary, nothing other than the injuries he sustained as a result of the accident would have had a major impact on AMG's gross profits or sales during the relevant period of time.

On April 6, 2005, the trial court heard oral argument on, among other things, a motion in limine filed by Bova. Bova sought to bar Gary from offering evidence of "alleged lost profits from AMG Engineering and Machining, Inc. without first having established his standing to bring such a claim." Appellant's App. p. 143–44. The trial court denied Bova's motion. Bova then immediately moved to dismiss the portion of Gary's complaint related to lost profits for failure to state a claim. The trial court noted that it considered the motion to be untimely, but denied it to the extent that it was timely.

During the trial, which began on April 6, 2005, the jury heard evidence presented by Gary regarding AMG's alleged lost profits. On April 7, 2005, the jury returned a verdict in Gary's favor and awarded him

---

1. We held oral argument in this case on March 1, 2006, in Indianapolis. We com-

mend counsel on their able written and oral presentations.

$82,348.91. Bova now appeals the denials of his motion in limine and motion to dismiss.

## DISCUSSION AND DECISION

Bova contends that it was improper for the jury to consider evidence of AMG's lost profits because Gary, as an individual, did not have standing to raise corporate lost profits. In particular, he argues that individual shareholders may not maintain a cause of action that belongs to their corporation and that we should not create an exception to the rule for S corporations.

### I. Standard of Review

#### A. Motion in Limine

Bova argues that the trial court erred in denying his motion in limine. It is well settled, however, that the granting of a motion in limine does not determine the ultimate admissibility of the evidence. *Howard v. State*, 816 N.E.2d 948, 960 (Ind. Ct.App.2004). The purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. *Id.* at 961. If the trial court errs by admitting evidence, the exclusion of which was sought by the motion in limine, then the error is in admitting the evidence at trial in violation of an evidentiary rule, not in denying the motion in limine. *Id.*

The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Id.* Accordingly, we will not overturn a trial court's decision to admit or exclude evidence absent a showing of a manifest abuse resulting in the denial of a fair trial. *Id.*

#### B. Motion to Dismiss

After the trial court denied Bova's motion in limine, he immediately made an oral motion to dismiss Gary's claim for AMG's lost profits for failure to state a claim. When reviewing a motion to dismiss for failure to state a claim, we will look only to the complaint to determine if the trial court's denial was appropriate. *Ameritech Publ'g, Inc. v. Strachan*, 783 N.E.2d 378, 380 (Ind.Ct.App.2003), *trans. denied.* We must determine whether the facts, as alleged in the complaint, are capable of supporting relief under any set of circumstances. *Id.*

The trial court initially found Bova's motion to dismiss to be untimely, which he argues is incorrect. He directs us to Indiana Trial Rule 12(H): "A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(A) or by motion for judgment on the pleadings, or at the trial on the merits." Additionally, he observes that a "defense of failure to state a claim may be raised at any time and is not waived by failure to include it in a consolidated motion under Trial Rule 12(B) or the answer." 21 Arthur, Indiana Practice 15.19.

### II. Admissibility of Evidence of AMG's Lost Profits

Bova first argues that the trial court erred in admitting evidence of AMG's lost profits because Gary may not assert claims that belong to AMG. He directs our attention to the well-settled rule that in general, shareholders may not maintain a cause of action that belongs to their corporation. *Hubbard v. Tomlinson*, 747 N.E.2d 69, 71 (Ind.Ct.App.2001). An exception to this rule is that a shareholder may maintain an individual cause of action when the wrong is to both the corporation and the shareholder as an individual. *Buschmann v. Prof'l Men's Ass'n*, 405 F.2d 659, 662 (7th Cir.1969) (interpreting Indiana law).

It is apparent to us, however, that Gary is not asserting a claim for lost profits on behalf of AMG. To the contrary, he is asserting a claim only for his own personal injuries and the damages that are directly related to those injuries, including the value of his lost earning capacity that resulted from his inability to work while he recovered from his injuries. To prove the value of his lost earning capacity, Gary offered evidence of AMG's lost profits as an indicator of that value. That Gary received his full salary for the two years in question is of no moment, inasmuch as he is entitled to recover the value of his lost earning capacity in addition to his salary. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis,* 783 N.E.2d 274, 283 (Ind. Ct.App.2002) (observing that the basic measure of damages for lost earnings capacity is the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he was capable of earning thereafter). Thus, Gary is not asserting a claim that belongs to AMG; rather, he is seeking to recover all damages causally related to his personal injuries, including his losses as sole shareholder of AMG. Because Gary is attempting to redress a personal, rather than a corporate, injury, the rule prohibiting shareholders from maintaining a corporate cause of action does not bar his recovery.

The parties next dispute whether the fact that AMG is an S corporation should affect the admissibility of evidence of its lost profits as a benchmark for Gary's personal losses following Bova's negligence. The S corporation is a "regular business corporation which qualifies for and has elected to take advantage of the special income tax treatment provided by subchapter S of the Internal Revenue Code." 21 Galanti, Indiana Practice 2.6, p. 77. Thus, doing business as an S corporation "has the same advantages as other corporations when compared to unincorporated forms of business." *Id.* at 377.

Bova directs our attention to case law holding that "the only difference between S corporations and other corporations is that S corporations receive special treatment for federal income tax purposes." *Gullett v. Van Dyke Constr. Co.,* 327 Mont. 30, 111 P.3d 220, 223 (2005). Gary responds by observing that while that may have been the case in *Gullett,* the evidence here shows that there are substantial differences between AMG and a C corporation. Indeed, the trial court agreed:

THE [TRIAL] COURT: If all of this corporation's loss in profits pass through to Mr. Gary, then it seems to me that the structure is significantly different than a regular corporation where that isn't true, where . . . it would be difficult in a regular corporation . . . to determine what exactly was a loss to the shareholder and I think that's part of the reason.

\* \* \* \* \* \*

But in any event, it seems to me that a Sub S makes it a whole lot different because all the corporation's profit and loss come to Mr. Gary, and it seems to me that that—if you take a look, well, a sole proprietor is not a problem. That's clear. Those profits will pass through to him personally, so that's different. Even if he's got 20 employees as a sole proprietor, we wouldn't be arguing this way . . . .

I'm saying well, if I've got a person who is in a Sub S corporation, is that more like the classic corporate structure or is that more like a sole proprietorship, and *it seems to me that's a whole lot more like a sole proprietorship and seems to me that to clothe him with the strictures*

*of a classic corporation doesn't seem to quite fit the mold.*

\* \* \* \* \* \*

It's not a classic corporation and it's not a sole proprietorship, it's a Sub S. So the question is which is it most analogous to.... And as a matter of fact, I guess one of the tests that seems to me to be appropriate is that when you have piercing of the corporate veil situation where you're really talking about the classic corporate structure versus the sole proprietorship, Sub S's, in my experience, have been very easy to pierce because the person and the corporation tend to be one and the same just like a sole proprietorship.

\* \* \* \* \* \*

MR. REESE: May I ask though, Judge, are we carving out an exception to the general rule here simply because it's a Sub S, because Sub S's aren't limited to one shareholder.

THE [TRIAL] COURT: *I think it's the facts of each case. The question is how close to a sole proprietorship is the actual business functioning so that profits and losses to this business are directly related to this person.*

And I agree with you. If you had 10 people in the Sub S, then we might have a different situation in terms of prorating. And where nine people may be 100 percent of the income of the Sub S and the one person who is injured may not be contributing much of anything, I think that complicates more of the issue. But in terms of the looking at the analogy, the question is in terms of what loss flowed to Mr. Gary as a result of the injuries.

Appellant's App. p. 13–17 (emphases added).

Gary argues that the trial court was correct in determining that the admissibility of evidence of lost profits should be considered on a case-by-case basis. He directs our attention to *Sezonov v. Wagner*, 274 Ill.App.3d 511, 210 Ill.Dec. 953, 654 N.E.2d 252 (1995). In *Sezonov,* the plaintiffs were injured in an automobile accident, and they sought to present evidence of the lost profits or expenses incurred because of a delay in opening a new pet store. The pet store was owned by a corporation of which the plaintiffs, a husband and wife, were the sole shareholders and officers. The plaintiffs alleged that the delay was caused by the husband's ability to work. The court concluded that even though the plaintiffs sought to introduce evidence of corporate lost profits, "the measure of lost earnings is more complicated when the injured person is self-employed." *Id.* at 254. The plaintiffs were not seeking to recover for all corporate losses, only those that were the direct result of the husband's inability to work. Thus, the court concluded that if the plaintiffs were able to prove that they could not open the store in a timely manner as a direct result of the husband's injuries, then they were entitled to recover damages resulting from the late opening. *Id.* Similarly, Gary argues that he was entitled to prove that AMG—and, consequently, Gary as an individual—incurred losses as a direct result of his injuries and recovery therefrom.

Gary also directs our attention to *Ewing v. Esterholt*, 210 Mont. 367, 684 P.2d 1053 (1984), in which the Montana Supreme Court considered an injured plaintiff whose business was an S corporation. The plaintiff was unable to work following his injuries, and the *Ewing* court affirmed the trial court, reasoning that "given the nature of respondent's business and the fact that it was a Subchapter S corporation, the trial judge felt the testimony on corporate profits would aid the jury in determining respondent's lost earnings." *Id.* at 1060.

Additionally, Gary directs us to *Glass v. Oeder*, 716 N.E.2d 413 (Ind.1999), in which our Supreme Court concluded that Subchapter S and C corporations may sometimes be treated differently. The court concluded that for the purpose of calculating a child support obligation, "the shareholder of a wholly-owned subchapter S corporation is to be treated the same as a self-employed person operating the business." *Id.* at 415. The court arrived at this conclusion by reasoning that if the shareholder

> [o]perated the business as a sole proprietorship rather than a wholly-owned subchapter S corporation, the act of paying himself a salary would have generated no income distinct from the profit of the proprietorship. Rather, it would have been simply a withdrawal of capital from the business. Otherwise stated, by paying himself a salary from [the corporation], [the shareholder] did not increase his net worth at all; he simply moved that amount from one form to another.

*Id.* at 416. Gary acknowledges that *Glass* is not directly on point because it involves child support issues, but emphasizes that the case demonstrates that it is not beyond the pale to suggest that an S corporation be treated differently from a C corporation.

 We are persuaded that where, as here, the S corporation at issue is essentially a sole proprietorship in which the only shareholder is so actively engaged in the company's day-to-day operations that he is akin to the entity's alter ego, an S corporation may be treated differently from a C corporation. Thus, under these limited circumstances, it is within the trial court's discretion to determine whether it is proper to admit evidence of the S corporation's lost profits as evidence of the personal losses of its sole shareholder.

Bova argues that *Sezonov* and *Ewing* are inapposite to this case because unlike in those cases, Gary did not suffer any losses because he received his full salary during the pertinent period of time. But the losses incurred by AMG as the result of Gary's inability to work flowed directly to Gary personally because he is personally liable for AMG's secured debt and because he is the sole shareholder, president, and primary decision maker of the company. That he continued to receive a salary is irrelevant when considered in light of the diminution in AMG's value and, consequently, the diminution of Gary's personal net worth. Thus, under these circumstances, that Gary continued to receive a salary does not mean that he is precluded from introducing evidence of AMG's losses.

 Bova argues that permitting Gary to disregard the corporate form when it is convenient would allow him "to have his cake and eat it too." Appellant's Br. p. 15. In other words, Gary chose the form he wanted for his business venture. He chose to incorporate AMG as an S corporation "for tax reasons and to provide us some special tax benefits being a Sub S and protection as a Sub S that we couldn't get as being a sole proprietorship." Appellant's App. p. 69–70. By deciding to conduct business in the corporate form, the shareholders of a corporation limit their exposure to direct personal liability. *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir.1994). Bova argues that to award corporate damages to individual—even sole—shareholders would circumvent the purpose of creating a corporation, enabling the corporate form to be "used indiscriminately as both a sword and a shield." *Holland v. United States*, 59 Fed.Cl. 735, 741 (Fed.Cl.2004).

We acknowledge that in deciding to incorporate AMG as an S corporation, Gary

reaped certain benefits and bound himself to certain corporate formalities. But in this situation, as determined by the trial court, AMG is far more like a sole proprietorship than a C corporation, and, accordingly, "to clothe [AMG] with the strictures of a classic corporation doesn't seem to quite fit the mold." Appellant's App. p. 14. Thus, because Gary is AMG's sole shareholder, president, and primary decision maker, because he is personally liable for AMG's secured debt, and because, given all of these factors, he is essentially AMG's alter ego, we conclude that it was within the trial court's discretion to admit the evidence of AMG's lost profits to establish a value for Gary's individual losses that he sustained as a result of Bova's negligence. Accordingly, we conclude that the trial court properly admitted evidence of AMG's lost profits as evidence of Gary's lost earnings and in denying Bova's motion to dismiss.

The judgment of the trial court is affirmed.

NAJAM, J., and BAILEY, J., concur.