507 P.3d 1010
2022 COA 4
George HODGE, Plaintiff-Appellee,
v.
MATRIX GROUP, INC., and Waterpark II & III, LLC, Defendants-Appellants.
Court of Appeals No. 20CA0746
Colorado Court of Appeals, Division II.
Announced January 6, 2022
Bachus & Schanker, LLC, Corey A. Holton, Denver, Colorado, for Plaintiff-Appellee
Campbell, Wagner, Frazier & Dvorchak, LLC, Michael O. Frazier, Kirstin M. Dvorchak, Joel A. Richardson, Greenwood Village, Colorado, for Defendants-Appellants
Opinion by JUDGE YUN
¶ 1 Defendants, Matrix Group, Inc., and Waterpark II & III, LLC (collectively, Waterpark), appeal the judgment entered on the jury's verdict in favor of plaintiff, George Hodge, in the amount of $752,500. Waterpark argues that the district court reversibly erred by permitting Hodge to offer evidence of the lost profits of his solely owned S corporation, Hodge Services, Inc., to support his claim of lost earning capacity following a slip-and-fall accident. Because Hodge is the sole shareholder of Hodge Services and the corporation's profits are attributable to Hodge's own skill and effort rather than invested capital and the labor of others, we conclude, as a matter of first impression in Colorado, that the jury could properly consider the corporation's lost profits in determining Hodge's loss of earning capacity. Accordingly, we affirm the judgment.
I. Background
¶ 2 Hodge, a fire and products liability investigator, is the sole owner and CEO of Hodge Services, a small forensic expert witness company. His major clients are insurance companies and law firms that hire him to investigate fire and products liability claims. The company's office is in Hodge's home, and its only other employee is a secretary.
¶ 3 Hodge Services leased a storage unit from Waterpark. In February 2018, while visiting the storage unit, Hodge slipped and fell on ice. The fall caused a complete retinal detachment and loss of useful vision in his right eye.
¶ 4 Hodge brought a personal injury lawsuit against Waterpark, alleging negligence and violations of the Premises Liability Act, § 13-21-115, C.R.S. 2021. As part of his economic damages, Hodge claimed a loss of earning capacity. The revenue from Hodge Services was Hodge's only source of income. When the company was doing well, Hodge paid himself a salary of $1,000 per week and occasional dividends from corporate profits; during slow periods, he did not take a salary. He testified that the eye injury dramatically reduced his ability to earn money because "99 percent of [his work] is looking at items to see what failed and why."
¶ 5 During the litigation, Waterpark designated Hodge Services as a nonparty at fault pursuant to section 13-21-111.5, C.R.S. 2021. In the designation, Waterpark asserted that (1) Hodge Services was the tenant of the storage unit and had signed a lease agreement in effect at the time of Hodge's fall; (2) the lease provided that "Tenant shall keep immediate entry areas in front and back of the Premises free and clear of ice and snow"; (3) Waterpark believed Hodge's fall occurred in such "immediate entry areas"; and (4) Hodge Services was therefore "legally responsible for the condition of the subject premises, and was a cause of [Hodge's] alleged injuries and damages."
¶ 6 Before trial, Waterpark filed a motion in limine to bar Hodge from offering evidence of Hodge Services’ lost profits to support his claim of lost earning capacity. Because Hodge Services is incorporated, Waterpark argued, "the [c]ompany's profits are not Hodge's as a matter of law ... and therefore, are improper for the jury's consideration." Rather, Hodge should be "limited to pursuing his personal wage loss."
¶ 7 The district court denied the motion, ruling that
the entire loss claimed by Mr. Hodge is predicated on the decline in income of his business as a result of his slip-and-fall. Because Mr. Hodge is self-employed, he has used the loss of business income as a barometer for his personal income and loss 507 P.3d 1013 of earnings. He decides how much money his company pays him.... So the Court finds that the lost profits of Mr. Hodge's company [are] closely intertwined with his actual income and ... the Court will permit that testimony.
¶ 8 At trial, Hodge's expert testified that he had been retained to evaluate Hodge's loss of earning capacity and that, in determining what Hodge's average annual earnings would have been without the injury, he considered both Hodge's salary from Hodge Services and the profits of his business. When asked why he considered both salary and profits, he testified that
[o]ne of the benefits of self-employment, having your own business, is you get to decide how much you pay yourself in salary and how much you take in profits. And for some people, that can have tax consequences. And so, generally, what happens is people who have their own business strategize with their accountant and decide how much they want to take in salary, how much they want to take in profit. But in the end, it's all money that they can use to buy stuff. And so again, [w]hat represents [your] earning capacity is your salary and your profit. And that's, of course, assuming that you are the sole owner of your company.
¶ 9 The jury found that Hodge was 40% at fault, Hodge Services was 25% at fault, and Waterpark was 35% at fault. The jury further found that Hodge had suffered $1,150,000 in economic damages, including loss of earning capacity. Ultimately, the court entered judgment against Waterpark and awarded Hodge a total of $752,500.
II. Analysis
¶ 10 Waterpark contends that the district court reversibly erred by admitting evidence of Hodge Services’ lost profits because (1) the corporation's profits do not belong to Hodge; (2) admitting the evidence "led to an inconsistent verdict"; and (3) the evidence should have been barred as a discovery sanction. We examine each contention in turn.
A. Admissibility of Evidence of Hodge Services’ Lost Profits
¶ 11 Hodge first argues that the district court abused its discretion by admitting evidence of Hodge Services’ lost profits because Hodge may not claim damages that belong to his corporation. We disagree.
1. Standard of Review ¶ 12 We review a district court's determination of the admissibility of evidence, including expert testimony, for an abuse of discretion. Bocian v. Owners Ins. Co. , 2020 COA 98, ¶ 63, 482 P.3d 502. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misunderstanding of the law. Genova v. Longs Peak Emergency Physicians, P.C. , 72 P.3d 454, 458 (Colo. App. 2003). To the extent a court's ruling encompasses purely legal issues, we review that aspect of its ruling de novo. Corsentino v. Cordova , 4 P.3d 1082, 1087 (Colo. 2000).
2. Law and Discussion ¶ 13 "The principle of making the injured party whole underlies all negligence cases." Cope v. Vermeer Sales & Serv. of Colo., Inc. , 650 P.2d 1307, 1309 (Colo. App. 1982). As a general rule, a party is entitled to recover for damages that naturally and probably result from the negligence of another. Id. A trial court may instruct the jury on an injured party's impairment of earning capacity if such an instruction is appropriate in light of the evidence in the case. Jones v. Cruzan , 33 P.3d 1262, 1264 (Colo. App. 2001). Impairment of earning capacity is determined by comparing what the injured party was capable of earning before the accident with what the injured party is capable of earning thereafter. Hildyard v. W. Fasteners, Inc. , 33 Colo. App. 396, 405, 522 P.2d 596, 601 (1974). ¶ 14 Generally, when a duly formed corporation is harmed by some action of a third party, "the right to seek redress for that wrong belongs to the corporation," A.R.A. Mfg. Co. v. Cohen , 654 P.2d 857, 860 (Colo. App. 1982), and "a stockholder is precluded 507 P.3d 1014 from asserting a personal right of action against [the] third party whose actions have caused damage to the corporation," Nicholson v. Ash , 800 P.2d 1352, 1356 (Colo. App. 1990). Accordingly, a plaintiff in a personal injury action may not recover, as a distinct element of damages, a corporation's loss of "business profits" — that is, "the net earnings of a business [that] arise from the elements of invested capital and employed labor." Ford Motor Co. v. Conrardy , 29 Colo. App. 577, 582-83, 488 P.2d 219, 222 (1971). ¶ 15 On the other hand,
when an injured plaintiff is engaged in a business or occupation in which the element of plaintiff's personal services predominates and the elements of capital and the labor of others [are] not so material, then evidence of loss of profits may be shown as an aid in determining the pecuniary value of plaintiff's loss of time.... Such holdings are neither in conflict with nor an exception to the rule that ‘profits,’ as such, are not recoverable in personal injury actions. The distinction ... is that in such cases the plaintiff's loss is not a loss of profits, in the sense that that term is used in actions for breach of contract, but is a loss of earnings from personal services and, as such, is a loss recoverable as an element of damages. Id. at 584, 488 P.2d at 222-23 ; see Trujillo v. Wilson , 117 Colo. 430, 433-34, 189 P.2d 147, 149-50 (1948) (Evidence of the injured party's profits from his turkey-raising business was properly admitted "as an aid to the jury in estimating a fair and just compensation for being prevented by the injury from prosecuting such work."); Schell v. Navajo Freight Lines, Inc. , 693 P.2d 382, 385 (Colo. App. 1984) (Because the injured farmer's income was based on personal labor, evidence of "loss of income or profits [was] admissible ... to show damage suffered ... as a result of being prevented from engaging in his farming operations."); Rio Grande W. Ry. Co. v. Rubenstein , 5 Colo. App. 121, 122, 125, 38 P. 76, 76-77 (1894) (An injured traveling salesman could introduce evidence of "the extent and amount of his ordinary business, and thus lay the foundation which would enable the jury to ascertain the direct and necessary damages which would result from the injury."). ¶ 16 Here, Hodge did not seek to recover Hodge Services’ lost profits as a distinct element of his personal injury economic damages, and no separate category of damages was on the verdict form for the lost profits of Hodge Services. Rather, the district court instructed the jury to consider
[a]ny economic losses or injuries which Plaintiff has had to the present time or which Plaintiff will probably have in the future, including: reasonable and necessary medical expenses, wage loss and loss of earning capacity, and loss of household services.
Hodge's expert testified that he considered the profits of Hodge Services to determine Hodge's average annual earnings had he not been injured, and made clear to the jury that his consideration of business profits was based on Hodge's status as the sole owner of Hodge Services — because, as he explained, a sole owner can "decide how much they want to take in salary, how much they want to take in profit. But in the end, it's all money that they can use to buy stuff."
¶ 17 Waterpark does not dispute that "the element of [Hodge's] personal services predominates and the elements of capital and the labor of others [are] not so material" in generating Hodge Services’ profits. See Conrardy , 29 Colo. App. at 584, 488 P.2d at 222. Instead, it argues that Conrardy and the other personal injury cases cited above are distinguishable because none of the plaintiffs in those cases formally incorporated their business. It argues that, because shareholders generally may not claim damages that belong to their corporation, a plaintiff who is the sole owner of a corporation may not offer evidence of that corporation's profits to support the plaintiff's loss of earning capacity.
¶ 18 While Colorado courts have not specifically considered whether the lost profits of a solely owned corporation are admissible as evidence of its injured owner's lost earning capacity, courts in other jurisdictions have considered this precise issue and have held such evidence to be admissible. In 507 P.3d 1015 Bova v. Gary , 843 N.E.2d 952, 954-56 (Ind. Ct. App. 2006), for instance, the court held that a plaintiff in a personal injury lawsuit could offer evidence of the lost profits of his solely owned S corporation "[t]o prove the value of his lost earning capacity." In doing so, the court rejected the argument that it was improper for the jury to consider evidence of an S corporation's lost profits because its sole shareholder, as an individual, did not have standing to maintain a cause of action that belonged to the corporation. Id. at 955. "It is apparent to us," the court continued, that the plaintiff
is not asserting a claim for lost profits on behalf of [the corporation]. To the contrary, he is asserting a claim only for his own personal injuries and the damages that are directly related to those injuries, including the value of his lost earning capacity that resulted from his inability to work while he recovered from his injuries.... Because [the plaintiff] is attempting to redress a personal, rather than a corporate, injury, the rule prohibiting shareholders from maintaining a corporate cause of action does not bar his recovery. Id. at 956. Accordingly, the court held, "it was within the trial court's discretion to admit the evidence of [the corporation's] lost profits to establish a value for [the plaintiff's] individual losses that he sustained as a result of [the defendant's] negligence." Id. at 959.
¶ 19 Likewise, in Capers v. One Beacon Ins. Co. , No. CV 07-95-M-DWM-JCL, 2008 WL 11347698, at *2-3 (D. Mont. Aug. 18, 2008), the federal district court held that a plaintiff in a personal injury lawsuit could offer evidence of the lost profits of his solely owned S corporation if the plaintiff could show that such profits "derived from his own personal services and efforts, and not from the investment of capital or the labor of others." The court reasoned that,
if [the plaintiff's] business enterprises were not capital intensive, were not dependent on the labor of others, and were viable predominantly because of [the plaintiff's] personal services and efforts performed for his business, then the loss of his business income is a proper measure of compensable damages if the loss was caused by his injuries. Under [the plaintiff's] circumstances and the nature of his S corporation structure, an expert's testimony on corporate profits can assist the jury in understanding a plaintiff's lost earnings. Id. at *3 ; see also Chambers v. Fike , No. 13-1410-RDR, 2015 WL 404810, at *2 (D. Kan. Jan. 29, 2015) (stating that the court's ruling that a personal injury plaintiff could not recover the lost profits of his single-owner LLC as a separate element of damages did not foreclose "the possibility that competent evidence of [the LLC's] lost profits or other business losses would be admissible as proof of plaintiff's economic loss").
¶ 20 We find the reasoning of these cases persuasive. As Hodge's expert explained, both Hodge's salary and the profits of Hodge Services reflected Hodge's earning capacity. Further, Hodge Services’ profits were generated from Hodge's personal services rather than "the elements of capital and the labor of others." Conrardy , 29 Colo. App. at 584, 488 P.2d at 222. Accordingly, we conclude that it was within the district court's discretion to determine whether, under the circumstances of this case, the profits of Hodge's solely owned S corporation were admissible as evidence of his lost earning capacity. We perceive no abuse of that discretion.
B. Inconsistent Verdict ¶ 21 Alternatively, Waterpark contends that the district court erred by admitting evidence of Hodge Services’ lost profits because admitting this evidence led to an inconsistent verdict. Waterpark argues that, by permitting Hodge's expert to testify regarding Hodge Services’ lost profits, the district court disregarded the corporate form and treated Hodge and his company as "one and the same." But the jury ultimately determined that Hodge Services was 25% responsible for Hodge's damages — and because Hodge himself was 40% at fault, treating Hodge and his company as "one and the same" for liability purposes would have made their combined fault greater than 50%, barring any recovery. § 13-21-111, C.R.S. 2021. Accordingly, Waterpark argues, the district court "erroneously allowed Hodge to maintain that [Hodge Services] was a separate corporate entity for purposes of liability, 507 P.3d 1016 while simultaneously allowing him to claim [Hodge Services’] business profits as personal damages," resulting in an inconsistent verdict.
¶ 22 We conclude that Waterpark did not preserve a part of this argument because it was not raised in the district court. Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm , 2012 CO 61, ¶ 18, 287 P.3d 842. Waterpark, not Hodge, designated Hodge Services as a nonparty at fault pursuant to section 13-21-111.5 and sought to treat it as a separate entity for liability purposes. Waterpark never argued that (1) Hodge Services’ negligence should be imputed to Hodge for purposes of the comparative negligence statute or (2) an inconsistent verdict could result if the district court admitted evidence of Hodge Services’ lost profits without imputing Hodge Services’ negligence to Hodge. To the contrary, Waterpark agreed to jury instructions and a verdict form that treated Hodge Services and Hodge separately for liability purposes. See Day v. Johnson , 255 P.3d 1064, 1067-68 (Colo. 2011) (" C.R.C.P. 51 requires parties to object to alleged errors in instructions before they are given to the jury and only the objected-upon grounds will be considered on appeal."). Accordingly, Waterpark's arguments regarding the comparative negligence statute and inconsistent verdict are not preserved for appeal. ¶ 23 However, to the extent that Waterpark contends that the district court erred by admitting evidence of corporate profits without "a judicial finding that Mr. Hodge and [Hodge Services] are one and the same," that argument is preserved. We nonetheless reject this argument because the admissibility of corporate profits and the limitation of liability afforded by the corporate form are two separate issues. As discussed above, a sole shareholder of an S corporation may present evidence of corporate profits to prove the value of his loss of earning capacity in a personal injury action. That does not mean that the shareholder and the S corporation should be treated as "one and the same" for liability purposes.[1] Cf. Bova , 843 N.E.2d at 957-59 (rejecting the argument that the plaintiff could not introduce corporate profits as evidence of his lost earnings while using the corporate form to limit tax and personal liability). Waterpark offers no authority, and we are aware of none, supporting its position.
C. Discovery Sanction
¶ 24 Finally, Waterpark contends that the district court abused its discretion by admitting evidence of Hodge Services’ lost profits because the evidence should have been barred as a discovery sanction. We disagree.
1. Additional Background
¶ 25 The discovery in this case has a convoluted procedural history. Hodge initially claimed only his lost wages from Hodge Services, as reflected in his W-2s, as damages, and his expert's initial calculation of lost earning capacity was based solely on lost wages (and not Hodge Services’ lost profits). In January 2019, Waterpark's expert issued a report identifying materials he had not been able to review — including Hodge Services’ corporate tax returns, invoices, and income statements — and opining that Hodge's expert may have "significantly overstate[d]" Hodge's lost earning capacity. Waterpark then served written discovery requesting Hodge Services’ corporate financial information.
¶ 26 Hodge objected to this discovery and moved to strike Waterpark's expert's opinions. On April 2, 2019, the district court denied his motion to strike. The next day, the district court continued the trial to February 24, 2020. The court stated that "[a]ll discovery [was] frozen" but that it would permit one additional deposition of Hodge limited to the issue of current damages.
¶ 27 Concerned that Waterpark's expert would offer unrebutted testimony that Hodge Services’ business was in decline before 507 P.3d 1017 Hodge's injuries, Hodge disclosed Hodge Services’ corporate tax returns on July 31, 2019, almost seven months before trial. Two days later, Hodge disclosed a supplemental report from his expert, updating his calculation of Hodge's lost earning capacity based on the demonstrated profitability of Hodge Services. On January 17, 2020, Hodge disclosed an additional supplemental report from his expert.
¶ 28 Waterpark then filed its motion in limine seeking to bar Hodge from offering evidence of Hodge Services’ lost profits to support his claim of lost earning capacity. In addition to arguing that the evidence was not admissible, Waterpark argued that the evidence should be excluded as a discovery sanction because it was not disclosed until almost four months after the close of discovery. Waterpark argued that it was prejudiced by Hodge's "[s]elective disclosure" because Hodge had disclosed Hodge Services’ corporate tax returns without other "information the defense needed in order to adequately assess and defend against the ... new corporate loss claim," including profit or loss statements, balance sheets, and Hodge's individual tax returns.
¶ 29 In denying the motion in limine, the district court acknowledged that Hodge Services’ corporate tax returns and Hodge's expert's August 2019 supplemental report were disclosed four months after the close of discovery, but it noted that Waterpark nonetheless had ample time to review them and prepare for trial. The court further noted that the January 2020 supplemental report from Hodge's expert merely "reaffirm[ed]" his earlier opinions. Accordingly, the court found that "any perceived shortcomings of [the expert's] opinions, how he reached those opinions, [and] what information he did or did not use ... can be explored on cross-examination."
2. Standard of Review ¶ 30 We review the district court's resolution of discovery issues for an abuse of discretion. Affiniti Colo., LLC v. Kissinger & Fellman, P.C. , 2019 COA 147, ¶ 23, 461 P.3d 606.
3. Law and Discussion
¶ 31 Waterpark argues on appeal that the district court abused its discretion by allowing Hodge to disclose Hodge Services’ corporate tax returns and the supplemental expert report four months after the close of discovery. Waterpark claims that it was prejudiced by Hodge's "selective disclosure" because he disclosed the corporate tax returns without also disclosing other financial documents — the profit and loss statements, the balance sheets, and his individual tax returns — "which may support or contradict the Company's tax returns."
¶ 32 C.R.C.P. 37(c)(1) was amended in 2015. Cath. Health Initiatives Colo. v. Earl Swensson Assocs., Inc. , 2017 CO 94, ¶ 11, 403 P.3d 185. It provides as follows:
A party that without substantial justification fails to disclose information required by C.R.C.P. 26(a) or 26(e) shall not be permitted to present any evidence not so disclosed at trial ..., unless such failure has not caused and will not cause significant harm, or such preclusion is disproportionate to that harm. C.R.C.P. 37(c)(1). ¶ 33 Our supreme court has reaffirmed that "the harm and proportionality analysis" that preexisted the 2015 amendment "remains the proper framework for determining sanctions for discovery violations." Cath. Health Initiatives Colo. , ¶ 15 (citing the factors identified in Todd v. Bear Valley Village Apartments , 980 P.2d 973, 979 (Colo. 1999), for the harm and proportionality analysis). When a party fails to disclose evidence as required by C.R.C.P. 26, Rule 37(c)(1) does not automatically exclude the evidence; "rather, a trial court [i]s required to examine the harm caused by the non-disclosure and to weigh the proportionality of any sanction it impose[s]." Cath. Health Initiatives Colo. , ¶ 12. ¶ 34 The harm inquiry asks "not whether the new evidence is potentially harmful to the opposing side's case" but, instead, "whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the 507 P.3d 1018 evidence." Todd , 980 P.2d at 979. The supreme court provided a nonexhaustive list of factors "meant to highlight some areas of inquiry that are often relevant." Id. at 978. The factors include, as relevant here, the importance of the evidence, the prejudice or surprise to the party against whom the evidence is offered, the ability of the party to cure the prejudice, and the extent to which introducing the evidence would disrupt the trial. Id. The district court has considerable discretion in applying these factors. Id. ¶ 35 Here, the district court did not abuse its discretion by denying Waterpark's request to exclude evidence of lost profits as a sanction for the late disclosure. We agree with the district court that the expert's testimony regarding Hodge Services’ lost profits was important because "the entire loss claimed by Mr. Hodge is predicated on the decline in income of his business." Waterpark was not prejudiced or surprised by the evidence because Waterpark had almost seven months before trial to review the late-disclosed evidence and prepare for trial. Indeed, the record indicates that, after Hodge disclosed his expert's supplemental report in August 2019, Waterpark's expert submitted a rebuttal report. And, as the district court found, Hodge's expert's latest report in January 2020 "reaffirm[ed]" his earlier opinions, which had been disclosed almost seven months before trial.
¶ 36 Although Waterpark claimed prejudice from Hodge's "selective disclosure" of Hodge Services’ corporate tax returns, it did not avail itself of the pretrial procedure designed to promote discovery and eliminate surprises at trial. For instance, C.R.C.P. 37(a)(2) provides that, "[i]f a party fails to make a disclosure required by C.R.C.P. 26(a), any other party may move to compel disclosure." But when Hodge objected to producing Hodge Services’ financial documents, Waterpark did not move to compel production of these documents, either before or after Hodge's disclosure of the corporate tax returns and his expert's August 2019 supplemental report. Nor did Waterpark move to reopen discovery after those records and the report were disclosed in July and August of 2019. See C.R.C.P. 16(e) ("A party wishing to extend a deadline or otherwise amend the Case Management Order shall file a motion stating each proposed amendment...."); Silva v. Wilcox , 223 P.3d 127, 134 (Colo. App. 2009) (a trial court has discretion to reopen discovery). Instead, Waterpark waited until the eve of trial to file a motion to exclude the evidence.
¶ 37 Under these circumstances, we conclude that the district court did not abuse its discretion by denying Waterpark's motion to exclude evidence of Hodge Services’ lost profits as a discovery sanction.
III. Conclusion
¶ 38 The judgment is affirmed.
JUDGE BERGER and JUDGE VOGT* concur.
--------
Notes:
[1] Hodge Services’ liability arose only because it signed a lease requiring that the "Tenant shall keep immediate entry areas in front and back of the Premises free and clear of ice and snow." Under the lease, Hodge Services, not Hodge personally, is identified as the Tenant. And, as the judgment reflects, Hodge did not recover any damages caused by the percentage of negligence attributable to Hodge Services.
* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2021.
--------