

I N T H E

# Court of Appeals of Indiana



FILED

Feb 26 2025, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Georgia Ann Miller,

*Appellant-Plaintiff*

v.

Trinh Tran, M.D., and AllCare Rheumatology LLC,

*Appellees-Defendants*

---

February 26, 2025

Court of Appeals Case No.
24A-CT-1187

Appeal from the Hamilton Superior Court

The Honorable David K. Najjar, Judge

Trial Court Cause No.
29D05-1906-CT-5920

---

**Opinion by Judge Tavitas**

Judges May and DeBoer concur.

**Tavitas, Judge.**

## Case Summary

[1] Georgia Miller brought a medical malpractice action against Dr. Trinh Tran and Dr. Tran's employer, Allcare Rheumatology ("Allcare"). The jury found Dr. Tran and Allcare not liable. Miller appeals and argues that the trial court abused its discretion by: (1) denying, in part, Miller's motion in limine, which sought to prohibit questioning regarding the license suspension of one of Miller's expert witnesses; and (2) instructing the jury that (a) the jury could consider criminal convictions, along with other evidence, in determining witness credibility, and (b) Dr. Tran could not be found liable if she reasonably employed an acceptable method of treating Miller.

[2] We conclude that Miller's challenge to the motion in limine is waived. Furthermore, although we find the former instruction erroneous, we conclude that the trial court's instructions do not constitute reversible error under the circumstances of this case. Accordingly, we affirm.

## Issues

[3] Miller raises two issues on appeal, which we restate as:

    I.      Whether the trial court abused its discretion by denying, in part, Miller's motion in limine, which sought to prohibit

questioning regarding the license suspension of one of Miller's expert witnesses.

II.   Whether the trial court committed reversible error by instructing the jury that: (a) the jury could consider criminal convictions, along with other evidence, in determining witness credibility, and (b) Dr. Tran could not be found liable if she reasonably employed an acceptable method of treating Miller.

## Facts

In 2015, fifty-nine-year-old Miller was referred to Dr. Tran, a rheumatologist, by her primary care physician. The primary care physician made the referral because she suspected Miller could have a rheumatological disease based on Miller's symptoms, which included: years of pain in her muscles and joints, swelling in her knuckles, stiffness, pain in her shoulders and hips, hair loss, weight gain, mouth sores, and rashes. Blood testing revealed that Miller's antinuclear antibody ("ANA") levels were four times above the normal level. Miller had been previously diagnosed with fibromyalgia, and she believed that her mother had rheumatoid arthritis and possibly lupus.

Miller had her first visit with Dr. Tran on February 20, 2015. Dr. Tran performed a physical examination and noted tenderness, swelling, and "synovial thickening"[1] in several of Miller's joints. Tr. Vol. III p. 124. Dr.

---

[1] Synovial thickening refers to inflammation of the "thin membrane that cover[s] the outside of the joint." Tr. Vol. III p. 124.

Tran concluded that, although Miller had been diagnosed with fibromyalgia, Miller's symptoms were suggestive of inflammatory disease, such as rheumatoid arthritis and polymyalgia rheumatica, and "a connective tissue disorder most likely lupus." Ex. Vol. V p. 128. Dr. Tran recommended that Miller begin taking hydroxychloroquine and a steroid—prednisone. The plan was for Miller to taper the steroid down from 10 mg by 1 mg per month.

[6] At subsequent visits with Dr. Tran, Miller reported reduced pain since beginning the steroids, but her pain did not completely abate. Her pain was occasionally only mild, but she continued to experience flare-ups, especially after she lowered her steroid dosage in accordance with the taper plan. Dr. Tran concluded that Miller's polymyalgia rheumatica and rheumatoid arthritis were still active, so Dr. Tran continued to prescribe Miller prednisone. In October 2015, Dr. Tranh changed the prescription to Rayos, a slow-releasing form of prednisone, to minimize side effects. Dr. Tran also prescribed Miller methotrexate as a potential replacement for the steroids, but Miller did not tolerate the methotrexate. Dr. Tran then began to provide intramuscular steroid injections when Miller experienced flare-ups.

[7] On December 18, 2015, Miller reported increased pain and flare-ups. She had torn a biceps tendon near the shoulder when reaching back. Dr. Tran administered a steroid injection and recommended that Miller increase her Rayos dosage again. In 2016, Miller continued to experience intermittent pain, especially when she attempted to reduce her Rayos dosage. Dr. Tran recommended that Miller remain on Rayos, and Dr. Tran provided additional

steroid injections. Laboratory testing in December 2016 revealed a Vectra[2] score of forty-five, which indicated high rheumatoid arthritis disease activity.

[8] Miller continued to have intermittent pain in 2017, and on October 2, 2017, Miller sought a second opinion regarding her symptoms from the Cleveland Clinic. Miller was referred to rheumatologist Dr. Emily Littlejohn, who diagnosed Miller with "an undifferentiated connective tissue disease." Ex. Vol. VI p. 170. Dr. Littlejohn did not believe there was sufficient evidence that Miller had lupus or a form of arthritis. Dr. Littlejohn recommended that Miller discontinue taking steroids, and Miller tapered off the steroids by November 2018; however, Miller began to notice hip and hand pain. She was diagnosed with tendinosis in her right hip.

[9] On June 25, 2019, Miller filed a medical malpractice action against Dr. Tran and Allcare. Miller argued that Dr. Tran's treatment caused her to sustain her tendon injuries and to also experience weight gain, depression, hair loss, and other symptoms. On November 2, 2020, the Medical Review Panel issued its opinion that Dr. Tran "failed to meet the applicable standard of care but the conduct complained of was not a factor of the resultant damages." Appellant's App. Vol. II p. 32.

---

[2] A Vectra test is an FDA-approved blood test to assess "rheumatoid arthritis disease activity." Tr. Vol. III p. 153.

[10]     Miller's jury trial was scheduled for April 2024. Miller designated Dr. Robert Gregori as an expert witness on whether Dr. Tran's treatment caused Miller's injuries. On April 5, 2024, Miller filed a motion in limine in which she sought to preclude "testimony or evidence from any witness or argument by defense counsel of Dr. Robert Gregori's past criminal conviction, substance abuse, or disciplinary action taken against Dr. Gregori's medical license." *Id*. at 41. In 2007, Dr. Gregori's medical license was suspended after Dr. Gregori pleaded guilty to five felony offenses for writing false opiate prescriptions. His medical license was reinstated in full in 2012; however, he has not sought to reinstate his Drug Enforcement Administration ("DEA") license to prescribe opiates. Dr. Gregori's practice now principally consists of providing medical opinions, and he clinically treats few patients.

[11]     Miller argued in her motion in limine that Dr. Gregori's license suspension and convictions should be inadmissible because they were "too old . . . to have any probative value," the potential for prejudice was high, and the convictions were not admissible under the Rules of Evidence. Tr. Vol. II p. 5. The trial court granted the motion in part and denied the motion in part. The trial court ruled that the defense could discuss Dr. Gregori's license suspension and the factual circumstances behind it but could not "talk about the convictions." *Id*. at 8. The trial court noted that it was "not convinced" that Dr. Gregori's offenses were "crimes of dishonesty." *Id*.

[12]     During voir dire, Miller informed the prospective jurors that Dr. Gregori's medical license was previously suspended due to him "prescribing medication

for himself, narcotics." *Id*. at 45. Miller asked the prospective jurors whether they would "have any issue with that." *Id*. After the jury was empaneled, the trial court provided a preliminary instruction, over Miller's objection,[3] that Dr. Tran could not be found liable if she reasonably employed an acceptable method of treating Miller. The instruction was based on Indiana Model Civil Jury Instruction 1525 ("Choice of Treatment Modalities").[4]

[13]     The jury trial commenced. The central points of contention were: (1) whether Dr. Tran committed medical malpractice by treating Miller for inflammatory diseases with steroids through 2017 rather than treating Miller only for fibromyalgia, a noninflammatory disease, without steroids; and (2) whether the steroids caused Miller's injuries.

[14]     Miller played for the jury the video deposition testimony of two members of the medical review panel, Dr. James Ehlich and Dr. Henry Davis. Dr. Ehlich

---

[3] Miller objected to the preliminary instruction on the grounds that the instruction gave "the jury too much law at the beginning." Tr. Vol. II p. 9.

[4] The pattern instruction provides:

> [*Health care providers*] are allowed broad discretion in selecting treatment methods and are not limited to those most generally used.
>
> When more than one accepted method of treatment is available, the [*type of health care provider*] must use sound judgment in choosing which method to use.
>
> If a [*type of health care provider*] uses sound judgment in selecting from a variety of accepted treatments, and uses reasonable care and skill in treating a patient, then the [*type of health care provider*] is not responsible if the treatment does not succeed.
>
> The fact that other methods existed or that another [*type of health care provider*] would have used a different treatment does not establish medical negligence.

INDIANA MODEL CIVIL JURY INSTRUCTIONS (2023 Ed.)

testified that, although Miller presented with symptoms that could be indicative of inflammatory disease, Dr. Tran failed to consider that Miller's symptoms could all have been caused by her fibromyalgia alone. It is common for patients to present with symptoms that match either fibromyalgia or an inflammatory disease, but only patients with an inflammatory disease will respond positively to steroids in the long term.

[15] According to Dr. Ehlich, Dr. Tran was correct to prescribe Miller steroids initially, but Dr. Tran should have discontinued the steroids after approximately six months because Miller's symptoms did not improve.[5] Similarly, Dr. Davis testified that he "did not have an issue with [Dr. Tran's] initial treatment and diagnosis," Appellant's App. Vol. III p. 126, but that by 2016 or 2017, Dr. Tran should have reconsidered the steroid regimen or referred Miller for a second opinion. Dr. Ehlich and Dr. Davis believed that Dr. Tran's treatment fell below the standard of care; however, neither believed that Dr. Tran's treatment caused Miller's injuries. Rather, the doctors opined that Miller's injuries were due to aging.

[16] Following Dr. Ehlich's and Davis' testimony, Miller testified that she believed Dr. Tran's treatment caused her to suffer her tendon tears and other injuries.

---

[5] Dr. Ehlich also believed that Dr. Tran's steroid injections were at too high of a dose.

She was now managing her pain with Cymbalta and a depression medication without steroids.

[17] Miller called Dr. Gregori as an expert witness. Dr. Gregori testified—on direct examination—regarding the circumstances of his felony convictions and license suspension, explaining that he was addicted to opiates and wrote false prescriptions for friends that he "diverted back" to himself." Tr. Vol. II p. 239. He pleaded guilty to "five felony counts" and spent one year in jail. *Id.*

[18] Dr. Gregori then offered his expert opinion that Dr. Tran's treatment caused Miller's tendon injuries because long-term steroid use can damage tendons. Dr. Gregori agreed, however, that aging "can cause tendons to eventually give out as well." Tr. Vol. III p. 2. Other evidence showed that Miller was experiencing many of her symptoms before she began seeing Dr. Tran.

[19] Dr. Tran testified in defense of her treatment of Miller. Dr. Tran explained that fibromyalgia is a "chronic pain syndrome" that can occur in two forms: primary and secondary. *Id.* at 86. Primary fibromyalgia is "not common in the older age group" and must be determined by "excluding the other conditions that can cause the same symptoms." *Id.* at 86, 120. Unlike primary fibromyalgia, secondary fibromyalgia is a secondary condition caused by inflammatory disease, and the inflammatory disease must be treated for the fibromyalgia to "go away." *Id.* at 86.

[20] Dr. Tran believed Miller had secondary fibromyalgia, which meant Dr. Tran needed to treat the underlying inflammatory disease. This diagnosis was

informed by Miller's presentation. Miller had swollen hand joints suggestive of rheumatoid arthritis or lupus. The tenderness in Miller's shoulders and hips were suggestive of polymyalgia rheumatica, which is common in older adults. Miller had mouth sores and a skin rash, which are not caused by fibromyalgia. And Miller's response to the steroid regimen indicated an inflammatory disease rather than fibromyalgia; Miller would not have improved while on steroids, and her symptoms would not have worsened after taking steroids, if she only had fibromyalgia. Dr. Tran explained that she had sought to taper Miller off the steroids, but Miller's pain returned when her dosage was lowered. Additionally, Miller did not respond well to the medications intended to replace the steroids.

[21] Dr. Tran presented two expert witnesses, Dr. Gary Miller and Dr. Alvin Wells, who testified that Dr. Tran's treatment did not fall below the standard of care nor cause Miller's injuries. Dr. Wells opined that, by the time Miller went to the Cleveland Clinic, her symptoms were under better control because Dr. Tran's treatment was working.

[22] At the conclusion of the evidence, Miller objected to two of the trial court's proposed final instructions: (1) the Choice of Treatment Modalities instruction and (2) an instruction that the jury could consider criminal convictions in determining witness credibility. The trial court overruled both objections and gave the final instructions. The jury returned a verdict finding Dr. Tran and Allcare not liable. Miller now appeals.

## Discussion and Decision

Miller argues that the trial court abused its discretion by: (1) denying Miller's motion in limine "regarding Dr. Gregori's medical license suspension and the factual circumstances leading to it," Appellant's Br. p. 21; and (2) improperly giving jury instructions that (a) the jury could consider criminal convictions in determining witness credibility; and (b) Dr. Tran could not be found liable if she reasonably employed an acceptable method of treating Miller.

## I. Miller's challenge to the denial of her Motion in Limine is waived.

Although Miller frames the issue as a challenge to the denial of her motion in limine, we note that, under these circumstances, the proper way to present this issue is to challenge the admission of the evidence at the trial. "The purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself," and, thus, "the granting of a motion in limine does not determine the ultimate admissibility of the evidence." *Bova v. Gary*, 843 N.E.2d 952, 955 (Ind. Ct. App. 2006). "If the trial court errs by admitting evidence, the exclusion of which was sought by the motion in limine, then the error is in admitting the evidence at trial in violation of an evidentiary rule, not in denying the motion in limine." *Id*. We review the admission of evidence for an abuse of the trial court's discretion. *Id*.

Miller argues that the trial court erred by permitting cross-examination regarding the factual circumstances behind Dr. Gregori's license suspension.

We do not address this argument, however, because it is clearly waived. It is well settled that "the denial of a motion in limine is insufficient to preserve an issue for later appellate review"; a party must object at trial when the evidence is introduced to preserve the evidentiary challenge. *Means v. State*, 201 N.E.3d 1158, 1166 (Ind. 2023) (citing *Raess v. Doescher*, 883 N.E.2d 790, 796-97 (Ind. 2008) ("Only trial objections, not motions in limine, are effective to preserve claims of error for appellate review. Failure to object at trial to the admission of the evidence results in waiver of the error, notwithstanding a prior motion in limine.")).

[26] Here, Miller never objected to Dr. Gregori's testimony regarding the factual circumstances of his license suspension nor moved to strike that testimony. On the contrary, Miller deliberately presented this information to the jury. During voir dire, Miller informed the prospective jurors that Dr. Gregori's medical license was previously suspended due to him "prescribing medication for himself, narcotics." Tr. Vol. II p. 45. Later, during Miller's direct examination of Dr. Gregori, Miller asked, "[W]e talked a little bit to the jury about the fact that you had an issue with prescription medications. Would you tell us what led to that and what happened?" *Id*. at 239. Dr. Gregori then explained that he was addicted to opiates, he "made [his friends] patients," and he "diverted [opiate prescriptions] back" to himself. *Id*. Law enforcement began an investigation, Dr. Gregori pleaded guilty to five felonies, and he spent one year

in prison. Because he was convicted of felony offenses, his medical license was automatically suspended in 2007, but his license was fully reinstated in 2012.[6]

[27] Because Miller did not preserve at trial her challenge to the admission of evidence regarding the factual background of Dr. Gregori's license suspension, Miller's challenge to the trial court's ruling is clearly waived.[7] Miller argues that the trial court's ruling on her motion in limine "forced Ms. Miller's hand thus necessitating her to address the matter on the front end through Voir Dire and Direct Testimony of Dr. Gregori[.]" Appellant's Br. p. 23. Our Supreme Court, however, has held that such a tactic waives the issue for appeal.[8] In *Collins v. State*, 464 N.E.2d 1286, 1290 (Ind. 1984), our Supreme Court held that the defendant waived his challenge to the denial of his motion in limine regarding prior convictions because the "defendant introduced the evidence concerning his prior convictions himself on direct examination." The Court noted that, "[w]hile defense counsel may have believed that this was an appropriate tactical decision, defendant, by his choice to introduce this

---

[6] Dr. Gregori repeated much of this information again upon questioning by Dr. Tran on cross-examination.

[7] Although we do not address Miller's argument on the merits, we note our Supreme Court's holding in *Tunstall v. Manning*, 124 N.E.3d 1193, 1198 (Ind. 2019), that "both an expert's professional licensure status and the reasons for professional discipline may be admissible to impeach that expert's credibility" but "the evidence's admissibility is subject to statutory restrictions and specific rules of evidence."

[8] Miller's decision to elicit this evidence also constitutes invited error, which precludes her from challenging the admission of the evidence. *See Miller v. State*, 188 N.E.3d 871, 875 (Ind. 2022) (noting that a party invites an error if the conduct producing the error was part of a "deliberate, well-informed trial strategy," and the party generally cannot obtain appellate relief for such errors).

evidence, became its proponent[.]" *Id*. As in *Collins*, Miller's argument here is waived.

## II. The trial court's instructions do not constitute reversible error.

[28] Miller next challenges two of the trial court's jury instructions. We are required to evaluate: (1) whether the tendered instruction "correctly" states the law, (2) whether the instruction is "supported by evidence in the record," and (3) whether the substance of the proffered instruction is "covered by other instructions." *Humphrey v. Tuck*, 151 N.E.3d 1203, 1207 (Ind. 2020). "Only the first consideration is a legal question on which the trial court receives no deference. The other two are reviewed for an abuse of discretion." *Id*. We conclude that the trial court's instructions do not constitute reversible error.

## A. Final instruction regarding witness credibility

[29] Miller first argues that the trial court erred by giving Final Instruction 24, which stated: "You may consider evidence that a witness has been convicted of a crime along with all the other evidence in this case in deciding the witness's credibility and weight you will give his testimony."[9] Tr. Vol. IV p. 186. Miller objected on the grounds that Dr. Gregori was not convicted of a "crime of dishonesty." *Id*. at 56. The trial court gave the instruction over objection because Dr. Gregori volunteered the testimony regarding his criminal

---

[9] This instruction is nearly identical to Model Civil Jury Instruction 519, which provides: "You may consider evidence that a witness has been convicted of a crime, along with all the other evidence in this case, in deciding the witness's credibility and the weight you will give [*pronoun*] testimony."

convictions.[10]  Miller appears to argue that the instruction incorrectly states the law or was not supported by the evidence because Dr. Gregori's convictions were not admissible under Indiana Evidence Rules 403[11], 608[12], and 609.

[30]   Evidence Rule 609 provides, in relevant part:

> **(a) General Rule.**  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.
>
> **(b) Limit on Using the Evidence After 10 Years.**  This subdivision (b) applies if more than ten (10) years have passed since the witness's conviction or release from confinement for it,

---

[10] Although Miller did not ask Dr. Gregori about his convictions, Dr. Gregori testified on direct examination that he was convicted of "five felony counts, possession of oxycontin with intent to distribute" and that he spent one year in prison.  Tr. Vol. III p. 239; *see* Tr. Vol. IV p. 150 (Miller's counsel noting in her closing argument that Dr. Gregori "volunteer[ed]" information regarding his convictions).  Miller did not object to nor move to strike this testimony.

[11] Evidence Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[12] Evidence Rule 608 provides:

> **(a) Reputation or Opinion Evidence.**  A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
>
> **(b) Specific Instances of Conduct.**  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of another witness whose character the witness being cross-examined has testified about.

whichever is later. Evidence of the conviction is admissible only if:

> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

[31] We generally determine whether a crime "involves dishonesty or false statement" for the purposes of Evidence Rule 609(a) based upon the statutory elements. *See Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65, 84 (Ind. 2006) (holding wire fraud conviction was admissible under Evidence Rule 609 "because misrepresentation is an element of the crime"); *Winegar v. State*, 455 N.E.2d 398, 402 (Ind. Ct. App. 1983) (holding that check deception conviction was admissible under Evidence Rule 609 because "[p]roof of the elements of check deception would seem to be indicative of dishonesty").

[32] Here, Dr. Gregori was not convicted of a crime of dishonesty nor one of the enumerated convictions under Evidence Rule 609(a)(1).[13] His convictions are also much older than ten years old and had little probative value with regard to the case. *See Scalissi v. State*, 759 N.E.2d 618, 624 (Ind. 2001) (noting that

---

[13] Dr. Gregori claimed he was convicted of "possession of oxycontin with intent to distribute" and that he spent one year in prison. Tr. Vol. III p. 239. On appeal, Miller has not provided any additional information regarding Dr. Gregori's convictions, such as the official name of the offense and code citation, which would have been helpful for our review.

Evidence Rule 609(b) "presumes the exclusion of convictions more than ten years old"). Dr. Gregori's convictions, thus, would not have been admissible as crimes of dishonesty under Evidence Rule 609. Because Dr. Gregori's convictions would not have been admissible as crimes of dishonesty, the trial court erred by instructing the jury that it could consider that Dr. Gregori was "convicted of a crime" in determining his credibility.[14] Tr. Vol. IV p. 186; *see Price v. State*, 656 N.E.2d 860, 862 (Ind. Ct. App. 1995) ("It is well-settled in Indiana that for impeachment purposes, only convictions for crimes involving dishonesty or false statement, or 'infamous crimes' may be used to impeach a witness.") (citations omitted), *trans. denied*.

[33] Nonetheless, we find this error to be harmless. Our harmless error analysis is set forth by Appellate Rule 66(A), which "makes clear that an error in the trial court does not warrant reversal on appeal 'where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.'" *LaPorte Cmty. Sch. Corp. v. Rosales*, 963 N.E.2d 520, 525 (Ind. 2012) (quoting Ind. App. R. 66(A)). "Applying this rule in the context of erroneous jury instructions, we presume that such an instruction

---

[14] The commentary to Model Civil Jury Instruction 519, on which the trial court's instruction was based, notes that the instruction may be given when "prior conviction impeachment evidence is admitted[]" and that "[o]nly crimes of dishonesty or false statement, or certain 'infamous crimes,' are admissible to impeach a witness' credibility." INDIANA MODEL CIVIL JURY INSTRUCTIONS (2023 Ed.). The commentary, however, does not refer to Evidence Rule 609. We encourage the Civil Jury Instructions Committee to add reference to Evidence Rule 609 in this commentary in order to aid trial judges and lawyers in determining when a conviction is admissible, which triggers when this instruction is proper.

influenced the verdict and will reverse unless the verdict would have been the same under a proper instruction." *Id.*

[34] Here, several items of evidence tended to undermine Dr. Gregori's credibility. Dr. Gregori testified that he orchestrated a "scheme"—his own words—by making his friends patients, writing them opiate prescriptions, and diverting the drugs to himself to "maintain [his] addiction." Tr. Vol. II p. 239. Thus, although Dr. Gregori was not convicted of a crime of dishonesty for the purposes of Evidence Rule 609, his convictions clearly did involve dishonesty. And Dr. Gregori voluntarily drew attention to his criminal convictions several times during his direct examination regardless of the trial court's instruction. Dr. Gregori admitted that his prescription practices caused his license to be suspended, at least partially, for approximately five years. Furthermore, Dr. Gregori admitted that he is not a rheumatologist, and he clinically treats few patients.

[35] We recognize that Dr. Gregori was the only witness to offer an opinion that Dr. Tran's steroid treatment caused Miller's injuries. Dr. Gregori, however, agreed that aging can contribute to tendon injuries. Moreover, undisputed evidence demonstrated that Miller had pain in many of the areas where her tendon injuries occurred before seeing Dr. Tran and that Miller experienced many, if not all of her other symptoms—weight gain, hair loss, mouth sores, depression, and fatigue—prior to seeing Dr. Tran. Furthermore, although Miller claimed at trial that she was now managing her symptoms with only Cymbalta and a depression medication without steroids, Miller had already been taking

Cymbalta before she started seeing Dr. Tran. And by the time Miller consulted with the Cleveland Clinic, Miller had retired from her stressful job as an executive assistant. Dr. Tran testified that "stress can cause a lot of chronic illness." Tr. Vol. III p. 158.

[36] In light of the evidence disproving Miller's causation claim, the evidence separate from Dr. Gregori's convictions that tended to undermine his credibility, and the fact that Dr. Gregori volunteered the evidence regarding his convictions, we are not persuaded that the trial court's instruction meaningfully affected the jury's verdict.

## B. Choice of Treatment Modalities Instruction

[37] Lastly, Miller challenges the trial court's instruction that Dr. Tran could not be found liable if she reasonably employed an acceptable method of treatment. The trial court instructed the jury:

> Physicians are allowed broad discretion in selecting treatment methods and are not limited to those most generally used. When more than one accepted method of treatment is available, the physician must use sound judgment in choosing which method to use. If a physician uses sound judgment in selecting from a variety of accepted treatments, and uses reasonable care and skill in treating a patient, then the physician is not responsible if the treatment does not succeed. The fact that other methods existed or that another physician would have used a different treatment does not establish medical negligence.

Tr. Vol. IV p. 183. The trial court's instruction is almost identical to Model Civil Jury Instruction 1525. *Supra* n.4; *see Ind. State Police v. Estate of Damore*,

194 N.E.3d 1147, 1165 (Ind. Ct. App. 2022) (noting that the use of pattern jury instructions is "the preferred practice"), *trans. denied*.

[38]     We conclude that the trial court did not abuse its discretion by offering this instruction—neither as a preliminary nor a final instruction. Miller only appears to argue that the record lacked evidence to support giving the instruction.[15] But the record included evidence regarding different methods of treatment. Dr. Tran testified that her course of treatment was proper because Miller's symptoms were the result of inflammatory disease, and two medical experts opined that Dr. Tran selected an appropriate course of treatment. *See Upham v. Morgan Cnty. Hosp.*, 986 N.E.2d 834, 838-39 (Ind. Ct. App. 2013) (holding that Choice of Treatment Modalities instruction was proper when there was evidence in the record "that addressed treatment"), *trans. denied*. Although Miller's expert witnesses disagreed with Dr. Tran's treatment of Miller, it was for the jury to determine which opinion to find credible.

[39]     And the instruction does not, as Miller contends, "designat[e]" Dr. Tran's treatment as acceptable and, thus, "take[] the question out of the Jury's hands[.]" Appellant's Br. p. 19. On the contrary, the instruction merely provides a statement of law; it predetermines nothing regarding the

---

[15] Miller does not argue that the instruction incorrectly "state[s] the law" nor that the substance of the instruction was "covered by other instructions." *Humphrey v. Tuck*, 151 N.E.3d at 1207.

acceptability of Dr. Tran's treatment. The trial court did not abuse its discretion by providing this instruction.

## Conclusion

[40] Miller's challenge to the trial court's denial of her motion in limine is waived. Although the trial court erred by instructing the jury that it could consider the criminal convictions at issue here in determining witness credibility, any error in this instruction was harmless. Lastly, the trial court did not abuse its discretion in instructing the jury on the Choice of Treatment Modalities instruction. Accordingly, we affirm.

[41] Affirmed.

May, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Brandon E. Tate
Ann Marie Waldron
Katherine A. Piscione
Waldron Tate Bowen Land LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Kirk D. Bagrowski
Allison E. Pulliam
Eichhorn & Eichhorn, LLP
Hammond, Indiana